Our next case on the call of the docket is Agenda No. 21, Case No. 113812, Walter Fennell, I believe, v. Illinois Central Railroad Company. Appellant, counsel for the appellant, please proceed. Thank you, Your Honor. May it please the Court, my name is Ken Halwex, I represent Illinois Central Railroad Company. This is an interstate forum nonconvenience matter. The issue before the Court is whether the Circuit Court denial of defendant's motion to dismiss on the grounds of interstate forum nonconvenience was an abuse of discretion, or the plaintiff was a lifelong resident of the state of Mississippi. He claims all exposure to asbestos and other toxic substances occurred in Mississippi. There is no significant factual connection to the state of Illinois, and all of that matter was brought before the Circuit Court properly and timely. As this Court is well aware, the Court is to assess a balancing of all relevant private and public interest factors. In this case, they all strongly favor transfer of this matter to the Circuit Court, or dismissal of this matter in favor of a Mississippi forum. The Circuit Court abused its discretion because no reasonable person could take the view adopted by the Circuit Court. In this matter, the Circuit Court essentially relied upon five factors. I want to point out something else to the Court before I go on. This plaintiff had previously filed another lawsuit against Illinois Central Railroad in the state of Mississippi. It was subsequently dismissed and he refiled it in the state of Illinois. The Circuit Court relied upon five factors to conclude that St. Clair County was convenient. The first was documents at my office in Belleville, Illinois. As this Court is well aware, documentary evidence is less significant today than it ever was before. The other reason why documentary evidence is not an important factor and should be given little weight, if any, in an interstate case such as this, is technology has changed. All of these documents that the plaintiff is referring to are all electronic. They are all easily copied. They are easily transported. In fact, these particular Alton documents that the Plaintiff's Counsel represents was being significant are currently in the state of Memphis under subpoena in another matter in Memphis, Tennessee. These matters were the same plaintiff's counsel, coincidentally. The second factor that this Court looked at was two witnesses within the state of Illinois. Well, actually, one witness in the state of Illinois, but two employees, which the Court concluded would testify live if the matter were proceeded in Illinois. Presumably, that's because of Supreme Court Rule 237, which can mandate certain situations for the company to produce a witness line. First is Lyndall Burton, who is in Chicago. The second is Chuck Garrett, who is down in Memphis, Tennessee, which, again, is closer to Mississippi than it is to Illinois. What the Court didn't consider and what the Court gave basically no reference to at all in its order is the 14 witnesses that the defendant identified in the state of Mississippi. These included family members of the Plaintiff. These included co-workers of the Plaintiff. And these included medical professionals which the Plaintiff was treated with. There's been no treatment in the state of Illinois or, for that matter, any other state. The third factor that the Court looked at was the location of the Plaintiff's expert. And as this Court noted many, many years ago in Washington v. Illinois Power, the location of an expert witness is not an important factor in the form of nonconvenience analysis because it's easily manipulated, just as the location of documents are easily manipulated. My law firm, who has accumulated documents over the years, could easily move them to our Memphis office. We could open an office anywhere in the country and they would no longer be relevant. We cannot look at those kinds of factors in determining a form of nonconvenience issue or we're setting a bad precedent for basically Illinois becoming a clearinghouse for all form of nonconvenience or all asbestos toxic tort litigation across the state. The fourth factor that the Court found as support for holding the case into St. Clair County was that St. Clair County had an interest in the litigation because trains are transported across tracks through St. Clair County. Assuming, basically I'm assuming he's analyzed, Judge Guido was analogizing this case to a products liability case where essentially, like in Garing, where the Court has said maybe the products liability case is a local controversy. One of the problems with that analysis is the Plaintiff's complaint references specific locations within the state of Mississippi, including buildings in the state of Mississippi where his exposure occurred. And again, no exposure has been alleged and there's been no basis for any allegations of exposure within the state of Illinois. The fifth factor that the Court looked at was the Court congestion. The Court made essentially a self-serving statement saying that not many cases are tried anymore and if you want a trial, I'll give you a trial date and there'll be a guarantee. That doesn't really address the issue. The issue is the cost associated to the state of Illinois as a result of bringing foreign litigation into the state of Illinois to have them be tried here. There are significant costs associated with that. There is cost to the Court system because we obviously have, with all due respect to the judges in St. Clair County, because there are so many cases filed in St. Clair County, St. Clair County needs a lot of judges. The statistics that we showed showed that there were 20 times more cases filed in St. Clair County than there were in the entire judicial district that Copiah County would be in Mississippi where would be the residence of the plaintiff. Relying on those factors clearly shows that the Court did not basically do a complete balancing test. The Court specifically looked at things that he wanted to say were supporting keeping the cases into St. Clair County. If we look at strictly a balancing test in this case and we look at the private interest factors, if we look at the convenience of the parties, the ease of access of sources of proof and the practical problems, what we have is we have at the point at the Judge Quito's best case two witnesses in the state that will testify live in the state of Illinois versus 14 witnesses that we can't compel to appear anywhere. I mean we could, the argument will be made we could take depositions. I've been trying cases for 28 years. Depositions are not a substitute for actual live witnesses. The other problem with depositions or these are the contingencies of trial. And that's particularly clear when we look at situations where a witness, say the plaintiff gets up on the witness stand and an exposure case and claims that there is asbestos raining down out of the building and came down like flakes of dust. And we know there are co-workers who work with them. Those questions had never come up. They were never asked before. You're in the middle of a trial. What do you do? Well, if you're in the middle of a trial in Mississippi, you subpoena them. They come to trial. You're in the middle of a trial in the state of Illinois. You have no answer to that. That's what the problems with the contingencies of trial and the practical problems that make a trial of a case easy, expeditious, and inexpensive. Clearly, no matter what, there will be a great deal of cost. Even if we were to – even if we could get compliance with – get the people to come up voluntarily, we're going to have to pay them. Even if these individuals were employees, the co-workers were still employees, and we could compel them somehow to appear, there is a cost involved. There is time to get from Mississippi up to St. Clair County. When we look at the private interest factors, we clearly have five co-workers, a plaintiff's wife, three adult children, four medical providers, all of which we can't compel to attend anywhere, and the cost will be great. We provided all that information to the court. Another factor that is very important and has been mentioned by this court in Dowdy is the possibility of a view of the premises, however remote that is. It's not a question of whether or not you're going to have it. The question is whether or not there is a possibility of a view. We don't know that now, and we won't know that. The trial court will make that decision at the trial, but if the trial court decides, for instance, that we have a need for a view of the premises and we are in St. Clair County, it's not going to happen. We're not going to ship 12 jurors down to the state of Mississippi to look at a building. On the other hand, if the trial is done in Mississippi, which would be an appropriate, proper forum, then that is exactly what they would do. They put them into a bus, they take them to it. This is obviously a convenient forum for the plaintiff. The plaintiff, the plaintiff's family, all of the witnesses, the medical providers are all there in Mississippi. St. Clair County is inconvenient to Illinois Central Railroad because of these problems that we would have in defending this case. Does Illinois Central have any business operations in Illinois? Yes. Illinois Central currently operates track through the state of Illinois. It also has an office in Homewood, Illinois. Is that a significant factor in our analysis? Well, I do not believe it should be a significant factor. This court has mentioned multiple times in cases that just the fact of a company doing business in the state of Illinois cannot defeat forum nonconvenience. Because otherwise, there is no purpose to forum nonconvenience in the state of Illinois. Because then if there's no purpose to the venue statute versus as long as you are a business that operates in the state of Illinois, then forum nonconvenience is not, doesn't work. So it would defeat it completely. And also as just a practical answer, is that a policy that we would like in the state of Illinois? So that businesses leave the state of Illinois so that they are not subject to areas where they believe to be judicial hell holes or high jury verdicts. As for the public interest factors, the expense of a trial and a burden of jury duty on Illinois citizens in this case would be unfair. Since Illinois residents have no interest in trying the action of a Mississippi resident whose claim arose in Mississippi, the taxpayers shouldn't have to pay for it. Citizens shouldn't have to sit on juries. This is all a cost to the state of Illinois and to the economy of Illinois. Because quite frankly, when citizens are sitting on juries in cases that are brought from other states, the problem is they're not working. That's a cost to their employers. That's a cost to the taxpayers. The cost to the taxpayers in the state of Illinois of putting trials on. Trials are expensive. This is all significant cost to Illinois. This is not a situation where there is any connection other than the fact simply that the defendant has a business in the state of Illinois and that over the years there are documents that have been accumulated in my offices in Belleville, Illinois. That second part is very simple. We could move them to one of the other offices. We could open an office in the state of Wisconsin if we felt that was a more favorable place to try cases, and we move the documents there. That is not a significant factor in this analysis. The docket in St. Clair County that we provided to the court indicates that there were over 17,000 new cases filed in St. Clair County. In all counties in the district encompassing Copiah County in Mississippi, there were only 842. Now, while court congestion, as this court has talked about court congestion not being a significant factor or not to be placed too much weight on, the reality is that is a significant cost. That is why in St. Clair County there are so many judges there. That is why in Madison County there are so many judges because those areas have become places to bring lawsuits. I've been doing this 28 years, been practicing in southern Illinois for 28 years, and when I started practicing law back in 1984, forum nonconvenience was at its early stages. I have argued forum nonconvenience motions all over the place in St. Clair, Madison County. As this court has recognized, it has become the most litigated thing in the state of Illinois. These cases back in the early 80s were brought from all over the country to try cases, railroad cases, Jones Act cases, because the people believed they were favorable verdicts there. This is a case, when we get right down to it, of forum shop. Plain and simple. The plaintiff's, all of the plaintiff's exposure in this case happened in Mississippi. The plaintiff lived in Mississippi his entire life. A case against the Illinois Central Railroad was pending for multiple years in the state of Mississippi. It was then dismissed. Three years later, after it's dismissed, it's refiled in the state of Illinois. The state of Illinois has no more connection to this case than it did when this case was filed in Mississippi long ago. This court has talked about forum shopping in numerous cases going back to Peel. This is a classic case of forum shopping. This court has recognized forum shopping should not and cannot be condoned. We can't allow it. The costs associated with this type of litigation, the problems associated with this type of litigation, there is not a stronger case. This case is very similar to Gridley, which this court decided. There is not a stronger case or a case of a need to transfer this case out of St. Clair County that I have seen in a very, very long time. There is simply no significant connection to this, to St. Clair County, and for that matter, the state of Illinois, other than the simple fact that the Illinois Central Railroad does business in the state of Illinois. That's it. I mean, venue is proper, obviously. I see my light's on. I will say at this point I would urge the court to dismiss or to remand this case to the circuit court with instruction to dismiss this case under the doctrine of interstate forum nonconvence. Thank you very much. Thank you, Mr. Holvac. Counsel for the appellee. Good morning, Your Honors. Tim Eaton on behalf of the plaintiff. May it please the court. First of all, I want to be clear on one thing, because if you read the amicus briefs in this case and you read counsel's brief, you would think this was an asbestos case arising out of Madison County. It is not. The complaint is alleging that the plaintiff was exposed not only to asbestos, but to diesel exhaust, sand, environmental, tobacco, smoke, toxic concern, and caused problems to his lung. That's this case, and it's in St. Clair County. The other thing that I want to emphasize is that contrary to what counsel testified to this morning regarding his own experience, this court has made it very clear that the decision as to what is the proper forum is made at the trial court, and it is made upon the motion by a defendant who has the burden to show that the case should be moved. Because our state legislature has held that under a long-arm statute, if there's sufficient minimum contacts, you can bring a defendant into this state, and the jurors of St. Clair County would have to hear it. Our legislature has held under the Venue Act that if the defendant is doing business in that county, you can bring an action there, and that is a burden on the St. Clair County jurors. The gloss that has been over this has been the Form 9 convenience, and when this court first dealt with Form 9 convenience, it was faced with, number one, in the Whitney case, the Privilege and Immunities Act of the United States Constitution, which would allow out-of-state residents to come here and file, and this court was quick to say, no, no, no, wait a minute. We're not violating that, but we still can have a reasonable basis for not allowing them here. One, is there minimum contacts? In this case, there is. Two, is there a venue? Yes. And then when this court was deciding the Paley v. Skelgas case, the plaintiff was arguing, well, you can't have Form 9 convenience here because you're in conflict with the venue provision, and this court said, no, we only allow Form 9 convenience motions when, one, the burden is on the defendant, and two, the defendant shows exceptional circumstances, exceptional circumstances to move. Now, what do we have here? We have the plaintiff filed the action in St. Clair County for several reasons, and this was in his papers. He said, number one, I need access to what is called the Alton documents, and these were documents that were created back in the 1930s. These are very fragile documents. These are documents that are not easily transportable, contrary to what counsel said this morning, and by the way, counsel did not bring up anything with respect to subpoena documents in Tennessee when he was before the circuit court, and moreover, sought permission of this court to add that as additional authority, which was denied, and yet he still brought it up this morning. I don't know the facts in that subpoena situation because it's not part of this record, and I would ask this court not to consider it as well. But this court made it clear in the Simpkins matter that you have to prove foreseeability to show a duty, and what these Alton documents show in the 1930s is that the railroads were clearly aware of the problems dealing with asbestos and the hazards of asbestos. Now, who are we going to present those documents to? Well, there's a gentleman that works out of the railroad's Homewood office who resides in Joliet, Illinois, Lyndall Burton. He can testify as an industrial hygienist for the railroad how important these documents are in terms of foreseeability and risk. He is here. We can't get him in Mississippi if that's where this case was held. We have a gentleman, Charles Garrett, who is in Memphis. He is only 23 miles more, as the 5th District pointed out, to Belleville than it would be to go down to Mississippi where this case is tried. Twenty-three miles. He submits an affidavit in favor of their motion to perform nonconvenience and said, well, it would be inconvenient for me to go to Belleville. Why? There's no reason stated. There's no basis for it, and it might involve other employees. Who? All we know is that there are two important witnesses that the plaintiff has identified that he can reach pursuant to Supreme Court Rule 237B in Illinois, and according to the affidavit that has been uncontested, he cannot reach those witnesses in Mississippi. So that's point number two. We have two critical witnesses. You said there are two witnesses. One is a fellow named Liddell Burton. Yes. And the second name is who? Charles Garrett, who is in Memphis, and we would not be able to reach him if we were in Mississippi, because they don't have something similar to a 237 request. He still works for the defendant, so we could get him if he was here in St. Clair County. The third reason, and actually there's a number of reasons, we have the defense attorneys for the defendant, not only here, but in Mississippi and Tennessee. They're all over the place defending this railroad. So how is it inconvenient for them in Belleville, Illinois, when their counsel is just down the street from the courthouse with all of the documents? We have the plaintiff's counsel, and I know this court does not give much deference to that, but they give some. We have an expert witness. I know this court does not give much deference, but they give some. And when you start balancing these issues, and the court weighs all of the factors, not just one or two, the trial court was correct in deciding that this case belonged in St. Clair County. When you consider this court says only in exceptional circumstances will we move it. Did you say there was any kind of contamination that occurred to the plaintiff from St. Clair County? No, I did not. Your Honor, actually counsel says it all occurred in Mississippi. That's not accurate. I think that the answers to interrogatories indicated that he worked on a railroad car in addition to some facilities in Mississippi, that railroad car traveled from Mississippi to Louisiana, to Tennessee, to back. And with all due respect, if we're going to be having a jury view, I doubt that they're going to corral all those juries in Mississippi and put them on a railroad car and haul them around three states. So a jury view wouldn't even be a consideration in this case when you're talking about exposure to all these various substances that occurred while he was a brakeman, while he was an engineer. These occurred in a railroad car. So I think a jury view is not something that's at all even foreseeable in this case. And I'm well aware of the court's admonition in Dottie that even the possibility of one could make it a relevant factor. But here he claims exposure over 37 years. We don't know whether those buildings are still there. We know that part of it was in the railroad car. So I think based on these facts, which were very carefully weighed by the trial court and by the Fifth District, on these facts, the totality of the circumstances do not show the exceptional circumstances that need to be proven by the defendant. And let me address these 13 to 14 witnesses. The list keeps growing. It was 13 at one point. If you count their chart, it's 13. Now they say it's 14. Let me talk about those for a minute, because I think it's very, very important. I know what this court has said in Langenhorst and Dottie and Corrine, you need to show witnesses in what they're going to testify to. And we don't expect to have this long, drawn-out discovery on forum. But by the way, this case was filed in January of 2009. Defendant did not notice up their forum nonconvenience until 20 months later in September of 2010. So if we're talking about equities, we have 20 months in St. Clair County before they even took the initiative to notice it up. And now let's talk about the record. They are relying upon answers to interrogatories from the Mississippi case. They only cite one instance where they get into forum interrogatories in Illinois, and that deals with who his treating physicians are now. In the Mississippi case, because there wasn't a forum motion obviously presented there, in the Mississippi case, the plaintiff was asking those interrogatories, name the members of your family. He names his wife, and he names his children. Those are on the chart, and it says likely testimony. They're going to testify to his quality of life and damages. Where are they getting that? That wasn't in that answer. All it said was to list your family. Now they say, well, they could be possible witnesses. Then if you read what they submitted to the trial judge, they say it's likely those four will be called. We haven't made any indication that we're going to call them. They haven't made any indication that they're going to call them. Then you read the petition for leave to appeal before this court, and they say in that both sides are going to call these witnesses. Where does that come from? We have never said we're going to call those family members. And then in one of the amicus briefs that was filed by these certain defendants, they say their testimony will be crucial. It's made up. I mean, I understand that you have to put some reason down for what they're going to testify to, but you've got to have a basis for it. And I think that's what both the circuit court and the fifth district were missing. They list five coworkers. Where are those coworkers listed? In answers to interrogatories in Mississippi. Not here. He was asking forum interrogatories here, who are you going to call to testify with respect to coworkers? He says, see my rule 213s. Well, those weren't filed until after the forum motion had been decided. Those were filed November 2010. What do we say in Mississippi? We say in Mississippi they may or may not have knowledge about the working conditions or asbestos. Now they're on the list as likely witnesses, crucial testimony. We don't know whether those five folks are going to be called or not. But early in the proceedings when you have a forum motion, that would not be a time when you would have isolated the witnesses. I mean, it seems to me it's not unreasonable to say people that have been listed, workers and family, are likely witnesses. I mean, in a complex case, you're not going to assume that you're going to, it's not small claims court. You're not going to get the plaintiff up there and then he's going to rest. I mean, he wants to build a case. And, Your Honor, I appreciate that. And early on in the case, sometimes when these forum motions are filed, you don't have that information. But let's look at the facts in this case because every case is unique. We were in Mississippi for four years where discovery occurred and depositions were taken. It was filed here in January of 2009. There was discovery here. There were depositions here. They notice up their first motion for forum nonconvenience in May of 2009. They let it languish for a year. Discovery continues. And then they notice it up again in May of 2010 and the hearing is held in September of 2010. All I'm saying is that with respect to building a record, they had every opportunity. This is not a motion that was filed within 30 days of the complaint. You brought up the action in Mississippi and it was there for four years. Should that be any part of the consideration in this court? And if so, what? What consideration should be given or not? The defendant has raised it as an issue in their brief, saying that once it was dismissed in Mississippi, he then refiled here and then cites a number of cases that dealt with forum shopping that this court has addressed. Every one of those cases, and we address that in our brief, were cases where the plaintiff filed an action, voluntarily dismissed it, and then refiled in a different forum. The case in Mississippi was dismissed on the defendant's motion, not on the plaintiff's motion. In the case in Mississippi, the judge gave them a dismissal without prejudice so they could refile it. At that point, they refiled here. They're no longer part of this large group of plaintiffs, and plaintiff made the determination, I've got witnesses I have to depose, I can reach them in Illinois, I've got documents that I've got to see, I can reach them in Illinois, so they filed it here. So I think in the context of an involuntary dismissal, I don't think it's relevant. And let me add one other thing, too, because honestly, I think that the defendants have just misrepresented their case to this court. Because when we're talking about what witnesses would be relevant, and I agree, Justice Garmon, you're going to have to have more witnesses than just the plaintiff, but that's the purpose of the 213F, so you disclose who's going to testify, and those hadn't even been given to the defendant at that point. They were done later. But we talk about these Alton documents again. In the reply brief that defendant filed in this court, in response to what we said about the fragile nature of the Alton documents, and by the way, you can imagine the impact on the jury when you're handing them original documents. In fact, they're like on parchment. They have notes that show what the defendant knew, as opposed to copies that they just hand to them and say, oh, by the way, you know, we just Xeroxed these, take a look at them. The impact could be great, so we want the originals. So we said, because of the fragile nature, they can't be transferred, and we said that in the trial court, and there was no argument to the contrary then. Yet when they were faced with this uncontradicted evidence that we made below, they say in the reply brief, in reality, they are normal pieces of paper kept in an easily transportable manila folder. And then they cite to the supplemental record C40 at section 87. Well, I went to look. What does that say? Well, what it says is they are kept in a manila folder, a legible copy of Alton Railroad documents. It says nothing about the documents being normal pieces of paper that are easily transportable. This record does not support what they're saying in this brief. This record does not support 13 witnesses. This record at most supports two witnesses, doctors that were disclosed that they're dealing with this current condition now. He was asked about treating doctors. That you've ever seen in your whole life. He mentions a couple he hadn't seen in 15 years. They're on the list. So when you pare down that list as to what record they made, you're down to two witnesses that we need that we can get in Illinois and two witnesses that are in Mississippi. And this court has recognized many times doctors don't come to court and testify quite often. They're often done by videotape. So the fact that they may be in Mississippi is irrelevant. And secondly, they're plaintiff's doctors. So of course he's going to make some arrangements for them either to testify by deposition or bring them here. So when you start balancing, there's much more than meets the eye here that the defendant is arguing about.  This is what the circuit court was weighing. And when we get into this whole issue of the burden on St. Clair County jurors, I think this court made it clear and green that we're dealing with products liability or here national causes of action under the FELA or the Boiler Inspection Act. There's less of a local interest involved. So Mississippi doesn't have as much of an interest in the FELA or the Boiler Inspection Act as they might if it involved some localized accident there as they might if it involved Mississippi law. Because when this court was faced with Gridley v. State Farm, they were talking about applying Louisiana title law as I recall to everyone else that was outside. So the plaintiffs have shown that it's important for them to be in St. Clair County. The defendants have not met their burden. And the burden on St. Clair County taxpayers, in my opinion, is because we have the Privileges and Immunities Act or Privileges and Immunities Clause of the U.S. Constitution. We have the long-arm statute. We have a venue provision. That's why they have to hear it. And the only difference is that the defendant, if it can show exceptional circumstances, can move it. That was not shown here. The problem with this case is that the defendant has failed to meet the burden. And if you reverse, what you're saying is you don't have to meet the burden, defendants. You can make up this list of witnesses. You can make up what they're going to testify to. You can present it to the court. And if you're lucky, we'll affirm. And that's not the law. It was filed in 2002. It was dismissed in 2006. And Plaintiff refiled here in January of 2009. And did you say that motion for dismissal came from the defendant? Yes, and in fact, it's clear. It's in the record. I know, but I thought you also referred to it as an involuntary dismissal. Well, it was involuntary as far as the plaintiff was concerned. The defendant's motion to dismiss that cause of action was granted. We don't have issue preclusion? No, as a matter of fact, it was done without prejudice so that the plaintiff could refile. And when I say involuntary, I don't mean it in the terms. So was that done by agreement when you say it was done without prejudice? No. The trial judge, the order's in there. The trial judge said that he is granting the defendant's motion to dismiss the action without prejudice. That's all we know. And by the way, there was no record made of this below. All we have is the order that was entered by the Mississippi judge. But nothing in the order contemplating refiling in Illinois? No, but it certainly contemplated refiling somewhere because it said without prejudice. Right. Okay. Thank you. And again, Your Honors, we would ask that both the Circuit Court and the Fifth District be affirmed. Thank you. Rebuttal? First thing I'd like to make sure is very clear is all of the exposure that they're claiming, whether it be diesel, et cetera, none of that occurred in the state of Illinois. They have alleged that he has driven on trains in Louisiana and one other location, I can't recall right now. But he's not specific on where his alleged exposure is, he says, in his discovery responses throughout his work with the Illinois Central Railroad. He never worked in the state of Illinois, and it's very clear that he had. I want to talk a little bit about these lists of witnesses. One of the problems that you have in form nonconvenience analysis is you file the motions very early. That is the purpose of form nonconvenience, not to cause additional expense, et cetera. Obviously, we look to the things that we can find out. This is an exposure case. We know of coworkers that they have disclosed. Whether or not they will call them does not preclude us from needing to call them. These coworkers can testify that we were never exposed to asbestos or these other things, just as easily as they can say that they were. So those witnesses are clearly witnesses. Whether they know of exposure or not, if they don't know of any exposure and they were riding along with the plaintiff, that's a good witness for the defense. But also, two of these five coworkers were also plaintiffs in the Mississippi lawsuit, claiming the same exposure that the plaintiff was. So I suspect those are people who will, in fact, be called. Now, when we get to the medical doctors, now those are the only medical doctors that this individual has seen. There have been no medical doctors anywhere else. One of those doctors is a pulmonologist. One is a heart doctor. Clearly relevant. But the other doctors are also relevant because going to his history in trying lawsuits, we look back long into medical records to find things like whether they've ever had a history of smoking, whether they've had a history of exposures. People tell their doctors things and we go back and we look for those things. These are important witnesses. The doctors are always important witnesses. When it comes to the family members, obviously we would anticipate the family members testifying on behalf of the plaintiff. Or if they don't testify on behalf of the plaintiff and they say, no, he's had no change in his behavior, he's not ill, they may testify on behalf of the plaintiff. The contingencies of trial, we don't know. We never know early on. Now, when you're a defendant faced in a case like this, the problem becomes is if we go out and we start deposing all of these witnesses and we do all of the work that counsel here has indicated that we should do, I can guarantee you we'll be sitting in front of a judge in St. Clair County or in Madison County or in some other county in the state of Illinois saying, well, it's not inconvenient. Look, they already went and did all this discovery. They've already taken these depositions. They've done this work. How could it be inconvenient? They've done. Is there any significance to the fact that this action was filed in Illinois in January of 09 and you didn't file the form of nonconvenience motion? I guess the dismissal was in September of 10. The reason why is we filed the motion and then we called up for hearing. Then sometimes we decide there's continuances or whatever. There's no problem with the timing of the motion. There was no significance to that. We submit initial discovery off. We talk about Supreme Court Rule 213 as there are scheduling orders that happen that talk about witnesses. We don't get necessarily answers to all of these questions. We don't get to do this work and we don't go out and take depositions of all these people, again, because we'd be taking depositions and we would be faced with the same argument that we've already spent the money, therefore it can't be inconvenient. With regard to the view of the premises, possibility of view, he says, well, it's on railroad cars. Right, we at this moment do not know specifically from point of where he is claiming that there is exposure. He says throughout his work, a broad allegation. He says in buildings. Well, obviously he worked in buildings. He worked on trains, if he says so. We don't know what they are. The question of whether or not the possibility of a view should be very carefully weighed because we won't know whether or not there will be a need until somewhere down the road. But we know this, if there is a need and we are in a trial, we're not going to get that view if, in fact, we're in Illinois. It won't happen. The jury will not get to see it. He talks, the appellate counsel talks about us not having met our burden because we didn't go out and do discovery, we didn't do this. The court, this court in Gridley, citing Piper Aircraft, said very clearly that type of specificity is not required because if you do it, it's defeating the whole purpose of form non-convenience. In essence, we won't be able to have a real doctrine of form non-convenience if we're required to essentially go out, prepare the case for trial, get all of this information and then file the motion. This is an exceptional case. This is a very exceptional case. The defendant has met its burden. This is an exceptional case because this is a case brought by a resident of Mississippi. This case has no connection whatsoever with the state of Illinois. We have identified significant witnesses. We've identified costs that will be borne by us. The private and public interest factors clearly, clearly weigh in favor of dismissal of this case and the trial court abuses discretion. Thank you. Case number 113812, Walter Fennell, Appali versus Illinois Central Railroad Company is taken under advisement as agenda number 21. Mr. Hallback, Mr. Eaton, we thank you for your arguments today. Mr. Marshall, the Illinois Supreme Court stands adjourned until 9 a.m. tomorrow morning, Thursday, September 20, 2012.